UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TRACI HADDEN,<br><br>                    Petitioner,<br><br>v.<br><br>WARDEN KIRKMAN,<br><br>                         Respondent. | Case No. 4:14-cv-00192-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Traci Hadden's Petition for Writ of Habeas Corpus (Dkt. 2). Respondent has filed an Answer and Brief in Support of Dismissal, and Petitioner has filed a reply. (Dkt. 10, 11). The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on October 24, 2014. (Dkt. 9.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order

**MEMORANDUM DECISION AND ORDER - 1**

dismissing the Petition in part, denying the Petition in part, and dismissing this case with prejudice.

## BACKGROUND

In the winter of 2008, Steven Bilbao, a cattle rancher near Shoshone, Idaho, "awoke to find that twenty head of cattle were missing from his ranch." (State's Lodging B-4 at 1.) Petitioner was later charged with the grand theft of the cattle. Before trial, Petitioner moved for a change in venue from Lincoln County to Custer County, "primarily due to the extensive pretrial publicity surrounding unrelated charges for the attempted murder of her former father-in-law, Craig Hadden, a well-known realtor and businessman in the area, and for the solicitation of the murder of a police officer, filed against her during the pendency of this case." (*Id*. at 1-2; *see also* State's Lodging A-1 at 115.)

The trial court denied the motion for a change in venue, concluding that Petitioner had not presented any direct evidence of bias within the community. Noting that "[a]t this stage of the proceeding there are no affidavits indicating prejudice or an absence of prejudice in the community other than the conclusory opinions of [Petitioner] and her counsel," the court recognized that "only . . . at voir dire" would the "court and the parties . . . be able to determine if any of the prospective jurors have formed an opinion based upon adverse pretrial publicity." (State's Lodging A-1 at 116-17.) The court found that the approximately 2700 qualified jurors in Lincoln Country, including approximately 400 jurors who were serving at that time, "should be an adequate pool of jurors to obtain

at least 13 impartial jurors for this trial." (*Id*. at 117.) The court stated that Petitioner could renew the motion for a change in venue at a later time.

Before jury selection, the trial court stated that it would call 80 potential jurors the first day of voir dire. "If [after that first day and if the panel were passed for cause] . . . there [were] at least 27 remaining qualified jurors, then counsel at that time would exercise their [seven] preemptory challenges." (State's Lodging A-3 at 66.) If there were fewer than 27 qualified jurors at the end of the first day, those jurors would come back the next day, when the court would call in another 80 jurors. If, after the second day, fewer than 27 qualified jurors remained, the trial court would order a change in venue to Jerome County. (*Id*. at 68.)

At the end of the first day of jury selection—and after the parties had exercised their challenges for cause—there were 32 potential jurors remaining. However, "defense counsel refused to pass the jury for cause and again renewed [Petitioner's] request for a change of venue." (State's Lodging B-4 at 9.) The trial court denied the motion. As the Idaho Court of Appeals later described it,

> Addressing the motion [for a change of venue], the district
> court noted about twenty of the existing panel of thirty-four,
> at the time the question of pretrial publicity was raised,
> indicated they had heard about the other pending charges
> against [Petitioner]. Only one potential juror was excused,
> when he indicated his friendship with Craig Hadden [the
> victim of the attempted murder] would color his judgment.
> The remaining potential jurors all indicated the information
> they had heard about the other charges would not affect their
> ability to fairly consider the present case—even after repeated
> questioning by defense counsel. The [trial] court . . .
> indicat[ed] its belief that the circumstances of the case,
> including the fact the other charges were merely pending and

**MEMORANDUM DECISION AND ORDER - 3**

[Petitioner] had not yet been convicted, were such that it would take the jurors at "their word" and not assume they could not separate the cases and operate fairly in this instance.

(*Id.*)

The trial proceeded in Lincoln County, where the following evidence was presented:

At trial, Blaine Ramey, a rancher and owner of a cattle company in Bingham County, Idaho, testified he purchased Bilbao's cows after being contacted by a man named Laramie Keppner, with whom he often did business, about buying some cows from a woman who was going through a divorce. Ramey testified Keppner was accompanied during the transaction by a woman and two teenage boys. During the transaction, a brand inspector came to the ranch and indicated the brand on the cattle was Bilbao's. The woman told Ramey she had a bill of sale for the calves from Bilbao, but had forgotten to bring it with her and would mail it to him. As a result, Ramey made his check payable to both Bilbao and Keppner. Ramey, who was elderly, could not identify at the preliminary hearing or at trial whether [Petitioner] was the woman who was present at the transaction. Likewise, the brand inspector could not identify Hadden with certainty as the woman present at the transaction.

At trial, Keppner testified that [Petitioner], whom he had known for approximately four to five years, contacted him and indicated she was going through a divorce and wanted to sell some cattle without her husband knowing. He further testified that early one morning, he accompanied [Petitioner], her sixteen-year-old son, and her son's teenage friend in [Petitioner's] pickup truck and trailer to a ranch in Butte County, Idaho, where they backed up to a corral and loaded twenty cattle into the trailer. Keppner testified the group took the cattle to Ramey's ranch, where they received a check made out to him and Bilbao for approximately $8500. Keppner cashed the check (apparently without Bilbao's endorsement) and gave the money to [Petitioner], who gave him $2,900 she owed him and kept the rest. On cross-examination, Keppner was confronted with the fact he had

**MEMORANDUM DECISION AND ORDER - 4**

testified at the preliminary hearing that only [Petitioner's] son
and the son's friend accompanied him to the Butte County
ranch to load the cattle, as well as other inconsistencies.

[Petitioner's] son, fifteen years old at the time of trial,
testified that [Petitioner] discussed with both him and
Keppner a plan to steal cattle because she needed money. He
also testified that [Petitioner] accompanied him, his friend,
and Keppner to pick up the cows from a corral and to sell
them to Ramey, and that Keppner cashed the check and gave
part of the money to [Petitioner]. [Petitioner's] son also
admitted he had testified at the preliminary hearing that his
mother had not been present when they picked up the cattle—
a "story" [Petitioner] told him to say. Additionally, he also
admitted to other inconsistencies between his preliminary
hearing and trial testimony and that he was given immunity in
exchange for his truthful trial testimony.

In closing argument, [Petitioner] contended the jury should
disregard the testimony of Keppner and [Petitioner's] son
based on the numerous contradictions within their individual
accounts and between their accounts at the preliminary
hearing and at trial. . . .

(State's Lodging B-4 at 2-3 (internal citations omitted).)

The jury found Petitioner guilty, and she was sentenced to a unified term of

fourteen years in prison with seven years fixed. (*Id.* at 3.) Petitioner appealed,

challenging one of the jury instructions and the trial court's denial of her motion for a

change in venue. (State's Lodging B-1 & B-3.) The Idaho Court of Appeals affirmed in a

published opinion, and the Idaho Supreme Court denied review. (State's Lodging B-4 &

B-7.)

**MEMORANDUM DECISION AND ORDER - 5**

While her direct appeal was still pending, Petitioner filed a petition for state postconviction relief.[1] After Petitioner was appointed counsel, who filed an amended petition, the state district court dismissed the postconviction petition.[2] (State's Lodging C-2 at 250-71, 277-78.)

On appeal from the dismissal of her postconviction petition, Petitioner raised only one claim related to the grand theft conviction at issue in this action: that her trial counsel rendered ineffective assistance in failing "to request a continuance following the receipt of a plea offer the day before trial, preventing [Petitioner] from having an adequate opportunity to consider the offer." (State's Lodging D-1 at 3; *see also id.* at 15-17.) The Idaho Court of Appeals affirmed the dismissal of the petition, and the Idaho Supreme Court denied review. (State's Lodging D-7 & D-10.)

In her federal Petition, Petitioner asserts the following claims:

| | |
|---|---|
| Claim 1: | Petitioner claims she is falsely imprisoned for a crime she did not commit. Thus, this appears to be an actual innocence claim. |
| Claim 2: | Petitioner claims that her trial counsel was ineffective by "not allowing her to produce, submit evidence to prove innocence." |
| Claim 3: | Petitioner states (a) that "she is falsely imprisoned" in violation of the Eighth |

---

[1]     In her petition, Petitioner challenged both the grand theft conviction at issue in this action and her conviction in the attempted murder case. It appears that, in that case, Petitioner pleaded guilty to aiding and abetting attempted murder and theft of stolen property in exchange for the dismissal of a criminal solicitation charge. *See* Idaho S. Ct. Data Repository, https://www.idcourts.us/repository/start/do.

[2]     All but one of Petitioner's postconviction claims were summarily dismissed without an evidentiary hearing. At the evidentiary hearing on the remaining claim—ineffective assistance of counsel for failing to appeal in Petitioner's attempted murder case—Petitioner stipulated to the dismissal of that claim. (State's Lodging C-2 at 270, 277.)

**MEMORANDUM DECISION AND ORDER - 6**

Amendment for "a crime she did not commit," (b) that she "was not given a fair trial," and (c) that she was not allowed to present "any evidence or witnesses she had to prove her innocence."

Claim 4:           Petitioner states (a) that she was given an "unfair sentence," (b) that she was improperly denied a change of venue, (c) that witnesses provided false testimony, and (d) that the trial judge should have been disqualified.

Claim 5:           Petitioner states that she was denied the effective assistance of counsel when trial counsel (a) did not allow her to testify at trial, (b) did not move for disqualification of the judge, (c) told her that "all sentences would run concurrent" and that on appeal "her innocence would be proven, and (d) "did not push for a mistrial regarding unfair and impartial jury [or for a] change of venue."[3]

Claim 6:           Petitioner states (a) that she had a "one-sided trial," and (b) that she was convicted of a crime she did not commit. Petitioner requests "a new trial, where new facts and evidence can be reviewed, and an impartial jury, out of Shoshone[,] Idaho [with] a change of venue, where her right to a fair trial may be given."

(Pet., Dkt. 2, at 2-5.)

As can be seen from this description, Claims 1, 3(a), and 6(b) all assert actual innocence and are essentially the same claim. Claims 2, 3(c), and 5 all allege that Petitioner was denied the effective assistance of counsel in various ways. Claims 3(b) and

---

[3]        Because of Petitioner's statement that trial counsel "did not push for a . . . change of venue" (Dkt. 2 at 5), the Court—before it received the state court record lodged by Respondent—initially construed Claim 5 as alleging ineffective assistance for failing to file a motion for a change in venue (Dkt. 6 at 2.) As the state court record shows, however, Petitioner's trial counsel twice moved for a change in venue, but the trial court denied both motions.

**MEMORANDUM DECISION AND ORDER - 7**

6(a) both assert, very broadly, that Petitioner was denied a fair trial, and Claims 4(a) through 4(d) set forth specific assertions that Petitioner believes support her contention that she did not receive a fair trial.

## PRELIMINARY MATTERS

In her Reply in support of her Petition, Petitioner requests (1) that she be allowed to amend her Petition, and (2) that counsel be appointed to represent her in this habeas action. (Dkt. 11 at 4.) Petitioner has also filed a document entitled "Motion for Evidentiary Hearing," although this Motion appears only to request a status update. (Dkt. 13.)

## 1.    Request to Amend Petition

The Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with established habeas practice and procedure. *See* Rule 12 of the Rules Governing Section 2254 Cases. Additionally, by statute, an application for habeas relief may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242.

Federal Rule of Civil Procedure 15 governs the amendment of civil pleadings. Pursuant to Rule 15(a)(1), a party may amend a pleading once "as a matter of course" within either (A) 21 days after serving the pleading; or, (B) if the amended pleading requires a responsive pleading to be filed thereafter, within the earlier of 21 days after service of a responsive pleading or a Rule 12(b), (e), or (f) motion. Any other amended pleadings cannot be filed absent written consent of the opposing party or leave of court,

though "[t]he Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Although public policy favors amendment, a court retains the discretion to deny leave to amend after considering factors such as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended her pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). These factors need not be given equal weight, and futility of the amendment alone may justify the denial of the request. *Id.*

In a habeas case that has been initiated after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), a request for leave to amend must also be construed in light the provisions and policies of AEDPA, which is designed to promote finality, comity, and federalism. *Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000). In particular, to advance the finality of judgments, Congress included a one-year statute of limitations in AEDPA, see 28 U.S.C. § 2244(d), and an amended habeas claim that has been tendered after the expiration of AEDPA's statute of limitations will relate back to the initial filing date only when it is "tied to a common core of operative facts" in the original pleading, *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (construing the interplay between AEDPA and Federal Rule of Civil Procedure 15(c)).

The Court concludes that the factors identified in *Bonin v. Calderon* weigh against allowing Petitioner to amend her petition. There is no specific evidence that Petitioner requested amendment in bad faith. However, Petitioner's initial Petition was filed in May 2014, and Petitioner gives no explanation for the delay in seeking amendment. Further,

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner has not submitted a copy of her proposed amended petition, so the Court cannot determine whether amendment would be futile. Finally, briefing on the claims in the Petition is complete, and Respondent would suffer prejudice if required to begin the process all over again. Petitioner's request to amend her Petition is therefore denied.

**2.      Request for Appointment of Counsel**

There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in her case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate her claims in light of the complexity of the legal issues and her likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

It appears from Petitioner's filings that she has been able to adequately bring her claims and protect her interests to date. The Court understands that Petitioner does not have legal training or legal resources. Therefore, the Court independently reviews the case citations and references provided by the State for accuracy and applicability. The Court also does its own research to determine whether other cases not cited by the State apply. Finally, the appellate review process before the United States Court of Appeals for the Ninth Circuit is available to ensure that the case has been adjudicated according to the

**MEMORANDUM DECISION AND ORDER - 10**

proper legal standards. Further, as discussed below, Petitioner is unable to succeed on her habeas claims. For this reason, the Court will deny Petitioner's request for appointment of counsel.

### 3.      Request for Status Update

In Petitioner's "Motion for Evidentiary Hearing," she states that she "ha[s] not received anything regarding this case since January 21, 2015." (Dkt. 13 at 1.) Therefore, Petitioner is not requesting a full evidentiary hearing, but rather a status update. Because this Memorandum Decision and Order resolves the Petition, the request for a status update is moot.

### CLAIMS 2, 3(c), 4(a), 4(c), 4(d), AND 5, AS WELL AS THE MAJORITY OF CLAIMS 3(b) AND 6(a), ARE PROCEDURALLY DEFAULTED AND SUBJECT TO DISMISSAL

For the reasons, that follow, the Court concludes that Claims 2, 3(c), 4(a), 4(c), 4(d), and 5 are procedurally defaulted. Claims 3(b) and 6(a), alleging a denial of Petitioner's right to a fair trial, are also procedurally defaulted, except to the extent that these claims encompass the change-of-venue claim set forth in more detail in Claim 4(b). Because Petitioner has not established an adequate excuse for the default, these claims must be dismissed.

### 1.      Standard of Law governing Procedural Default

A habeas petitioner must exhaust her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so

**MEMORANDUM DECISION AND ORDER - 11**

that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of her federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring her federal claim before the state court by "explicitly" citing the federal legal basis for her claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts

**MEMORANDUM DECISION AND ORDER - 12**

have rejected a claim on an adequate and independent state procedural ground. *Id.*;

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman*, 501 U.S. at 750.

2.  **Claims 2, 3(c), 4(a), 4(c), 4(d), and 5, as well as Claims 3(b) and 6(a) with the Exception of Petitioner's Change-of-Venue Claim, Are Procedurally Defaulted**

The simplest manner in which to resolve the exhaustion and procedural default

status of Petitioner's federal claims is to review which claims were raised and addressed

on the merits in the state court appellate proceedings. On direct appeal, Petitioner argued

only that a jury instruction was improper and that the trial court should have granted her

motion for a change in venue. (State's Lodging B-1 & B-3.) On appeal from the dismissal

of her postconviction petition, the only claim Petitioner raised with respect to the instant

grand theft conviction was ineffective assistance based on trial counsel's failure to

request a continuance so that Petitioner could consider a plea offer. (State's Lodging D-

1.)

Of these three claims that Petitioner raised to Idaho's appellate courts, only the

change-of-venue claim, Claim 4(b), is presented in the Petition. Therefore, Claims 2,

3(c), 4(a), 4(c), 4(d), and 5, as well as the majority of Claims 3(b) and 6(a), are

procedurally defaulted.

3.  **Petitioner Has Not Established Cause and Prejudice, or Actual Innocence, to Excuse the Default of Claims 2, 3(c), 4(a), 4(c), 4(d), 5, and Most of 3(b) and 6(a)**

That Claims 2, 3(c), 4(a), 4(c), 4(d), 5, and most of 3(b) and 6(a) are procedurally

defaulted does not end the inquiry. If a petitioner's claim is procedurally defaulted, a

federal district court can still hear the merits of the claim if the petitioner meets one of

two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

### A.    *Cause and Prejudice*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded her or her counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in the proceeding] constituted a *possibility* of prejudice, but that they worked to [the petitioner's] *actual* and substantial disadvantage, infecting [the] entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel ("IAC"). For example, the failure on appeal to raise a meritorious claim of trial error may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for ineffective assistance of direct appeal counsel ("IADAC") to serve as cause to excuse a default, that

**MEMORANDUM DECISION AND ORDER - 14**

IADAC claim must itself have been separately presented to the state appellate courts. *Id.* at 451 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.") If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show that an excuse for that separate default exists, as well.

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during a postconviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), worked a "remarkable" equitable change in the law governing procedurally defaulted IAC claims, *Lopez v Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012). *Martinez* altered the long-standing prohibition of *Coleman v. Thompson*, 501 U.S. 722 (1991), that ineffective assistance of postconviction review ("PCR") counsel could not be used to excuse the procedural default of a claim. In effect, *Martinez* created the potential for an exception to the overall ban on new evidence in § 2254 actions pronounced in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) (interpreting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)). *Martinez* makes it possible for procedurally defaulted claims of ineffective assistance of trial counsel ("IATC") to be heard de novo, with new supporting evidence, on federal habeas corpus

review.[4] *See Dickens v. Ryan*, 740 F.3d at 1320 ("We reject any argument that *Pinholster* bars the federal district court's ability to consider Dickens's 'new' IAC claim. . . . *Pinholster* says nothing about whether a court may consider a 'new' claim, based on 'new' evidence not previously presented to the state courts."). The *Martinez* exception applies only to claims that are exhausted *and* procedurally defaulted.

In *Trevino v. Thaler*, the Supreme Court described and clarified the *Martinez* cause and prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. 133 S. Ct. 1911, 1918, 1921 (2013). The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim. *See Martinez*, 132 S. Ct. at 1319.

Although it is not entirely clear from Petitioner's submissions, she appears to argue that neither she nor her postconviction counsel should have combined the instant grand theft case with the attempted murder case for purposes of state postconviction

---

[4]     The Ninth Circuit has concluded that *Martinez*—which addressed only underlying claims of IATC—also applies to IADAC claims. *Nguyen v. Curry*, 736 F.3d 1287, 1293-94 (9th Cir. 2013). Petitioner does not raise an IADAC claim in her Petition.

**MEMORANDUM DECISION AND ORDER - 16**

review.[5] (Dkt. 11 at 3, 7.) This is the only potential assertion of cause and prejudice that Petitioner has included in her briefing, and it invokes the *Martinez* exception to the *Coleman* rule. Thus, Petitioner does not appear to argue that cause and prejudice exist to excuse the default of any claims other than her IATC claims.

The only allegations that Petitioner makes regarding the decision to present challenges to both criminal cases in a single postconviction petition relate to her belief that her postconviction proceeding "was inconsistent with proper procedure as 2 cases were illegal combined. Petitioner repeatedly pointed out the court error and was denied meaningful access to courts." (Dkt. 11 at 7.) Petitioner asserts that "the combining of the two cases . . . impos[ed] a limitation on review [and] put the focus on the other charge, it chilled the petitioners [sic] exercise of my first amendment rights[;] the chilling effect on the 1st Amendment rights is enough to state an injury." (*Id.* at 3.)

These conclusory statements simply do not establish that the initial lack of counsel caused Petitioner to include both the instant grand theft conviction and the separate attempted murder conviction in a single postconviction petition. Further, they do not show that Petitioner's later-appointed PCR counsel rendered ineffective assistance by filing an amended petition that continued to challenge aspects of both cases. There is no evidence in the record remotely supporting an inference that appointed counsel

---

[5]      Petitioner may also be arguing that, once Petitioner and her postconviction counsel included both cases in the postconviction petition, it was unconstitutional for the state courts to continue to treat that petition as including claims related to both cases. However, claims of a state court's error during state postconviction proceedings are not cognizable on federal habeas review, which allows for habeas relief only for violations of the federal constitution, a federal statute, or a federal treaty. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (noting that "federal habeas corpus relief does not lie for errors of state law").

**MEMORANDUM DECISION AND ORDER - 17**

performed deficiently by continuing to challenge both convictions or that, had counsel represented Petitioner differently, Petitioner would have received relief on state postconviction review. Because postconviction counsel was not ineffective, counsel's representation cannot establish "cause" for the default of any of Petitioner's claims. Therefore, Petitioner has not satisfied the second prong of *Martinez*, and the Court need not address determine whether Petitioner's IATC claims are substantial.

### B.    Actual Innocence

Petitioner also argues that she is actually innocent. As explained above, even if a claim is procedurally defaulted, a petitioner can still bring the claim in a federal habeas petition if she demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support [her] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

**MEMORANDUM DECISION AND ORDER - 18**

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence for purposes of avoiding a procedural bar must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has not satisfied the demanding standard for a *Schlup* gateway claim of actual innocence. Her statements that she did not commit the crime are insufficient. *See Schlup*, 513 U.S. 324 (describing "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial" as the sort of "new reliable evidence" that can establish actual innocence).

**MEMORANDUM DECISION AND ORDER - 19**

Because Petitioner has not satisfied the cause-and-prejudice or actual innocence exception to procedural default, Claims 2, 3(c), 4(a), 4(c), 4(d), and 5, as well as Claims 3(b) and 6(a) with the exception of the change-of-venue claim, may not be heard on the merits in federal court.

**PETITIONER'S REMAINING CLAIMS MUST
BE DENIED ON THE MERITS**

The Court now considers Petitioner's remaining habeas claims on the merits.

**1.     Standard of Law for Review on the Merits**

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although a federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), a state court need not "give reasons before its

**MEMORANDUM DECISION AND ORDER - 20**

decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that

fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted). To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual

**MEMORANDUM DECISION AND ORDER - 22**

determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a

properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## 2.   Claims 1, 3(a), and 6(b), Asserting Actual Innocence, Must Be Denied on the Merits

The Court now considers Petitioner's actual innocence claims. Although Respondent argues that these claims are procedurally defaulted, the Court need not address that argument because the claims must be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**MEMORANDUM DECISION AND ORDER - 24**

Neither the United States Supreme Court nor the Ninth Circuit has determined whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable.").

On the other hand, *this* Court has previously stated that "a freestanding claim of actual innocence is not cognizable on collateral review in a non-capital federal habeas corpus action." *Stephenson v. Blades*, 2014 WL 3509448, at *7 (D. Idaho July 14, 2014); *see Herrera*, 506 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact."). However, even assuming that a freestanding claim of actual innocence *is*

**MEMORANDUM DECISION AND ORDER - 25**

cognizable in a noncapital habeas case such as this one, the Court concludes—on de novo review—that Petitioner is not entitled to relief on her claims of actual innocence.

The standard for establishing a freestanding claim of actual innocence would be extremely high, higher even than the standard for excusing procedural default under *Schlup*, and "the showing for a successful claim would have to be truly persuasive." *Jones*, 763 F.3d at 1246 (internal quotation marks and alterations omitted); *see House v. Bell*, 547 U.S. 518, 555 (2006) ("To be sure, House has cast considerable doubt on his guilt—doubt sufficient to satisfy *Schlup's* gateway standard for obtaining federal review despite a state procedural default. In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.' The sequence of the Court's decisions in *Herrera* and *Schlup*—first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*.") (internal citation marks omitted). At a bare minimum, the petitioner must "go beyond demonstrating doubt about [her] guilt, and must affirmatively prove that [she] is probably innocent." *Jones*, 763 F.3d at 1246 (internal quotation marks omitted).

In reviewing a freestanding claim of actual innocence, a court is not limited to the "newly discovered" evidence proffered by petitioner, but rather should "consider all the evidence, old and new, incriminating and exculpatory." *House*, 547 U.S. at 538. New evidence that merely discredits prosecution witnesses, rather than affirmatively supporting the petitioner's innocence, is unlikely to be sufficient. *Sistrunk v. Armenakis*, 292 F.3d 669, 676 (9th Cir. 2002). Even in the rare instances where courts have found

**MEMORANDUM DECISION AND ORDER - 26**

sufficient proof to meet the lesser "gateway" standard for avoiding procedural default, they have done so only where the new evidence consists of a solid alibi, numerous exonerating eyewitness accounts of the crime, DNA evidence excluding the petitioner and identifying another potential perpetrator, a credible confession by a likely suspect explaining that he had framed the petitioner, and/or evidence contradicting the very premise of the prosecutor's case against the petitioner. *See, e.g., House*, 547 U.S. at 521, 528-29, 540, 548-54; *Souter v. Jones*, 395 F.3d 577, 581-84, 591-92, 596 (6th Cir. 2005); *Carriger v. Stewart*, 132 F.3d 463, 465, 471, 478 (9th Cir. 1997); *Lisker v. Knowles*, 463 F. Supp. 2d 1008, 1018-28 (C.D. Cal. 2006); *Garcia v. Portuondo*, 334 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2004).

Given that the Court has already concluded that Petitioner has not met the lower burden required for a *gateway* claim of actual innocence for purposes of its procedural default analysis, it necessarily follows that Petitioner has failed to satisfy "whatever burden a hypothetical freestanding innocence claim would require." *House*, 547 U.S. at 555. Petitioner has not offered any evidence tending to support her conclusory statements that she did not commit the crime for which she was convicted. As the Supreme Court has stated, "[t]he meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup*, 513 U.S. at 329. Petitioner has not made such a showing.

Even if a freestanding actual innocence claim is cognizable in a noncapital case, Petitioner has not met the "extraordinarily high" levels of proof necessary to warrant

relief. *Jones*, 763 F.3d at 1246 (internal quotation marks omitted). Therefore, Claims 1, 3(a), and 6(b)—all of which assert actual innocence—are denied.

3. **Claim 4(b), Asserting a Due Process Violation Based on the Trial Court's Denial of Petitioner's Motion for a Change of Venue—as well as Claims 3(a) and 6(b), to the Extent these Claims Encompass Claim 4(b)—Must Be Denied on the Merits**

Claim 4(b) asserts that Petitioner was deprived of a fair trial when the trial court denied her motion for a change of venue.

A. *Clearly-Established Law*

The Sixth Amendment guarantees the right to an impartial jury. Though state crimes must be tried in the state where the crimes were committed, a court should transfer a proceeding "to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial—a 'basic requirement of due process.'" *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). In *Skilling*, the Supreme Court recited and clarified its jurisprudence regarding changes of venue where there is substantial pretrial publicity regarding the defendant or the crime.

"[P]retrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Id.* at 381 (internal quotation marks omitted). "Prominence does not necessarily produce prejudice, and juror *impartiality* . . . does not require [juror] *ignorance*." *Id.* at 380. Thus, although in certain circumstances pretrial publicity can raise a presumption of prejudice, such a presumption is justified only in the "extreme case." *Id.* at 381. An extreme case is one involving a "conviction obtained in a trial atmosphere that

was utterly corrupted by press coverage," where the publicity surrounding the defendant included reports of a "confession or other blatantly prejudicial information," where very little time elapsed between the crime and the trial, and where no other evidence "undermine[s] . . . the supposition of juror bias." *Id*. at 380-84 (internal quotation marks and alteration omitted). In the ordinary case, however, where such significant factors are absent, a petitioner asserting a Sixth Amendment violation based on the trial court's denial of a change-of-venue motion must show actual prejudice from that denial. *Id*. at 385.

"Jury selection . . . is 'particularly within the province of the trial judge,'" because the trial judge's appraisal of a potential juror's impartiality "is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Id*. at 386 (quoting *Ristaino v. Ross,* 424 U.S. 589, 594-595 (1976)). Therefore, in determining whether a petitioner has shown actual prejudice with respect to a denial of a motion for a change in venue, a reviewing court must "consider the adequacy of jury selection . . . attentive to the respect due to [trial-court] determinations of juror impartiality and of the measures necessary to ensure that impartiality." *Id*. at 387.

**B.**   ***State Court Decision***

In considering Petitioner's change-of-venue claim, the Idaho Court of Appeals noted that "[p]ublicity by itself does not require a change of venue, and error cannot be predicated on the mere existence of pretrial publicity concerning a criminal case."

**MEMORANDUM DECISION AND ORDER - 29**

(State's Lodging B-4at 6-7 (internal citations omitted).) The court listed several factors as relevant to the inquiry:

> [T]he existence of affidavits indicating prejudice or an absence of prejudice in the community where the trial took place; the testimony of the jurors at jury selection regarding whether they had formed an opinion based upon adverse pretrial publicity; whether the defendant challenged for cause any of the jurors finally selected; the nature and content of the pretrial publicity; and the amount of time elapsed between the pretrial publicity and the trial. *Needs*, 99 Idaho at 890, 591 P.2d at 137. When reviewing the nature and content of the pretrial publicity, this Court is concerned with the accuracy of the pretrial publicity, the extent to which the articles are inflammatory, inaccurate, or beyond the scope of admissible evidence, the number of articles, and whether the jurors were so incessantly exposed to such articles that they had subtly become conditioned to accept a particular version of the facts at trial. *Sheahan*, 139 Idaho at 278, 77 P.3d at 967; *Hall*, 111 Idaho at 829-30, 727 P.2d at 1257-58. A prospective juror's assurance that he or she is impartial is a consideration in reviewing the record, although such an assurance is not dispositive. *Sheahan,* 139 Idaho at 278, 77 P.3d at 967; *Hall,* 111 Idaho at 830, 727 P.2d at 1258.

(*Id*. at 7.)

The court of appeals also considered whether a presumption of prejudice was appropriate under *Skilling*, and concluded that it was not. In doing so, the court "examine[d] what occurred at voir dire—specifically, the testimony of potential jurors regarding whether they had formed an opinion based upon adverse pretrial publicity and whether defense counsel challenged any of the final jurors for cause":

> The record indicates that when jury selection commenced, out of approximately sixty-three potential jurors initially present, approximately fifteen indicated they knew something about the case from either a combination of press reports and discussion with others, or press reports alone. Those jurors

**MEMORANDUM DECISION AND ORDER - 30**

who had both a personal connection to parties in the case, as well as having read press reports, were almost entirely dismissed for cause. The remaining twelve jurors who were familiar with the case through media reports and/or discussion of these media reports with others, were each asked whether anything they knew would render them unable to be impartial. Almost all indicated they could be impartial—the several that couldn't were dismissed for cause.

Later in the process, approximately twenty potential jurors, of the existing panel of thirty-four, indicated they knew who had been charged in the attempted murder of Craig Hadden. Those potential jurors were asked whether they could be fair to Hadden in the instant case, even knowing she was a defendant in Craig Hadden's case, and all but one potential juror answered in the affirmative. The lone potential juror was excused when he indicated his friendship with Craig Hadden would color his judgment. The remaining potential jurors *all* indicated the information they had heard about the other charges would not affect their ability to fairly consider the present case—even after repeated questioning by defense counsel. Ultimately, four jurors who indicated they had read press articles about the case *and* also knew Hadden had been charged in Craig Hadden's case—but indicated they would be able to remain impartial—were seated on the jury. Defense counsel didn't challenge any of the four for cause individually (although, as indicated above, counsel did refuse to pass the jury for cause prior to selection of the actual jury).

(*Id*. at 17 (footnotes omitted).)

Having reviewed the trial court record, the appellate court concluded that (1) each of the jurors "convinced the trial court he or she could be fair and impartial," (2) there was no sense of a "pervasive feeling of hostility or guilt towards the defendant," and (3) the trial court "made every effort to ensure the empaneling of an impartial jury and there was no indication of the actual existence in any one juror's mind of an opinion raising a presumption of partiality." (*Id*. at 18 (internal quotation marks omitted).) The court first

**MEMORANDUM DECISION AND ORDER - 31**

examined "the nature and content of the pretrial publicity." (*Id.* at 18.) While recognizing that the media reports pertaining to Petitioner's alleged involvement in the attempted murder scheme were "inherently of a sensational and unflattering nature," the reports did not "render the publicity inflammatory to the extent of requiring a change of venue." (*Id.* at 19.) There was "no 'smoking-gun' contained in the pretrial publicity" that could lead to "prejudgment of [Petitioner's] culpability." (*Id.* at 20 (internal quotation marks omitted).)

The court of appeals also noted that the media coverage consisted of "approximately five newspaper and online articles mentioning [Petitioner's] involvement in the attempted murder case over a two-week period in June, approximately five months prior to the commencement of the grand theft trial in November." (*Id.*) The court found that "the circumstances present do not indicate a particularly high level of coverage, nor was it sustained over the five month period preceding the grand theft trial." (*Id.*) The court did not find dispositive the fact that Lincoln County "has a relatively small population," because the trial court took that fact into consideration "and, as a result, outlined a specific procedure to be followed in choosing a jury, which allowed for a change of venue if a certain number of qualified jurors could not be found." (*Id.* at 21.) There was "no indication the jurors actually chosen were biased," and thus the size of the county was not a significant factor weighing in favor of a presumption of prejudice.

After determining that the presumption of prejudice did not apply, the court then concluded that Petitioner's trial was fair, and that Petitioner's motion for a change of venue was appropriately denied, based on the court appeals' "assessment of the relevant

**MEMORANDUM DECISION AND ORDER - 32**

factors, including the testimony of the jurors exposed to pretrial publicity that they could be unbiased, the relatively factual and noninflammatory nature of the pretrial publicity, the relatively few media reports published five months prior to trial, and the fact the incident was not covered incessantly up to the trial and did not pervade the actual trial atmosphere." (*Id*. at 21-22.)

### C.    *Petitioner Is Not Entitled to Relief on Claim 4(b)*

As evident from the above discussion, the Idaho Court of Appeals properly applied clearly-established federal law regarding change-of-venue claims as set forth in *Skilling*. The court thoroughly examined the circumstances surrounding Petitioner's trial and the pretrial publicity leading up to it, reasonably concluding that Petitioner had received a fair trial. Petitioner has not established that the Idaho Court of Appeals rejected her change-of-venue claim based on an unreasonable application of Supreme Court precedent, or on an unreasonable factual determination. 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to relief on her change-of-venue claim.

## CONCLUSION

Many of Petitioner's claims are procedurally defaulted, and she has not established an adequate excuse for the default. Petitioner's remaining claims must be denied on the merits—her actual innocence claims do not survive de novo review, and her change-of-venue claim does not survive AEDPA review. For these reasons, the Petition will be dismissed in part and denied in part.

**MEMORANDUM DECISION AND ORDER - 33**

## ORDER

**IT IS ORDERED:**

1.      The Petition for Writ of Habeas Corpus (Dkt. 2) is DISMISSED IN PART and DENIED IN PART, and this entire action is DISMISSED with prejudice.

2.      Petitioner's "Motion for Evidentiary Hearing" (Dkt. 13) construed as a request for a status update, is MOOT.

3.      The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, she must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 15, 2016

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 34**